JAMES H. WEBB, ADMINISTRATOR, *vs.* JEREMIAH GOOD-
NOUGH AND OTHERS.

A testatrix by one clause of her will gave all her property without qualification to *A. G. S.*, the will concluding as follows:—"I appoint my husband, *J. G.*, executor of this will, who is to have his support out of the property, and may dispose of any or all of it if necessary for his support. All that remains at his death is to be given, as written above, to *A. G. S.*—she to have the control and use during her life." Held—
1. That the interest of *A. G. S.* was only a life estate, to commence at *J. G.'s* death.
2. That *J. G.* was entitled to the possession and control of the property during his life.
3. That his right to use the property for his support included also the right to support from it a wife whom he afterwards married.
The will gave the property at the decease of *A. G. S.* to her son *J. S.*, he to have possession when of age, and if other children were born to her, they to share equally when of age. *J. S.* died, but a later-born brother *R. S.* survived him. Held that the remainder vested in *R. S.*, subject to open and let in after-born children.

[Argued June 5th—decided August 22d, 1885.]

SUIT for advice as to the construction of the will of Adeline A. Goodnough, brought by the plaintiff, as administrator of her estate with the will annexed, to the Superior Court. Facts found and case reserved for advice. The case is sufficiently stated in the opinion.

*J. H. Webster,* for the plaintiff.

*J. W. Alling,* for J. Goodnough.

*W. L. Bennett* and *A. N. Wheeler,* for S. T. Stewart, A. G. Stewart and R. G. Stewart.

CARPENTER, J. The testatrix gave all her property to Addie G. Stewart. The will concluded as follows:—" I nominate, constitute and appoint my husband, Jeremiah Goodnough, the executor of this my last will and testament, who is to have his support out of the property, and may dispose of any or all of the above property if necessary for his support. All that remains at his death is to be given, as written above, to Addie G. Stewart, she to have the entire control and use during her lifetime; at her decease it shall be given to Jesse W. Stewart, he to have possession when twenty-one years of age, and if other children are born to her they shall share equally when twenty-one years old. If she leave no issue it shall be given to Sarah J. Brown of Wilkinsonville, Mass."

The first and third questions will be considered together. They are, in substance, what interests do Mrs. Stewart and Mr. Goodnough take respectively?

The will is crude, and carelessly drawn, but in the light of the facts as they then existed, it is not very difficult to ascertain the intention of the testatrix. Mr. and Mrs. Goodnough lived together fifty-two years, they had no children, and Mrs. Stewart was brought up and educated by them. The property in question was given to Mrs. Goodnough by her husband during their married life without other consideration than love and affection. The will

was made in 1882, and Mr. Goodnough was then about seventy-six years old. A part of the property is the house in which the parties lived. It will not be presumed, but must be shown if the fact was so, that she intended that her husband upon her death should be rudely severed from all his home associations and driven to find shelter and a home elsewhere. There are certainly no surrounding circumstances rendering such an intention probable. If we turn our attention to the will itself we not only fail to find it there, but we do find indications of a contrary intention. He was named executor, and as such was to have such possession of the property, as that office entitled him to. He was to have his support out of the property during life, and there is no intervening trustee to possess and control it. In connection with his support he was authorized to dispose of any and all the property, if necessary, for that purpose. From these provisions there is an implication, more or less strong, that he was to have the possession of the property during life.

The only other person that can lay any claim to it is Mrs. Stewart. Her interest is more clearly defined. The first clause of the will, if taken by itself, would give her the property absolutely from the death of the testatrix. But, taken in connection with what follows, her interest is not only reduced to a life estate, but that estate is made to commence at Mr. Goodnough's death. " All that remains at his death is to be given, as written above, to Addie G. Stewart, she to have the entire control and use during her life-time." Then follows a disposition of the remainder to children. The possession and control of the property by Mrs. Stewart during Mr. Goodnough's life, are not consistent with the provisions of the will in his favor.

It is objected that this construction makes the first clause in the will, giving the estate absolutely to Mrs. Stewart, inoperative. But that clause, so far as it purports to give her a fee simple, is clearly made inoperative by the subsequent provisions. As thus qualified it only operates to give her a life-estate. It was competent for the testatrix in

this manner not only to cut down the estate devised, but also to postpone its commencement. We think she has done both.

It is further objected that it would necessitate the raising of an estate in a trustee by implication and vesting the title in him during the life of Mr. Goodnough. If necessary to consider the will as raising a trust, we do not think it is necessary to call in the assistance of a third person as trustee. So long as Mr. Goodnough is capable of properly managing the estate he is in some sense, and may be regarded as, a trustee, to apply the income, and the principal if necessary, to his own support, and the remainder at his decease to be delivered to Mrs. Stewart.

It is also said that this construction leaves a portion of the income undisposed of. But it does not appear that the income will be any more than sufficient for his support. The testatrix clearly contemplated the probability that it would be necessary to sell a portion of the principal for that purpose. The estate is not large and is incumbered. The testatrix does not seem to have had in mind the possibility of a surplus. She knew that she wanted to provide for the support of her husband, and having done so in the simplest possible manner she did not concern herself with details and incidents. In a well considered and carefully written will, especially if the estate is relatively large, an omission of this character might be entitled to much consideration; in a case like this it can have but little weight. Forgetting a matter of this kind cannot seriously affect the disposition of other and more important matters which she evidently had in mind. It is possible, should Mr. Goodnough live many years, that in some years there may be a surplus, while in others there may be a deficiency. We see no difficulty in allowing any surplus to remain in his hands to provide for such deficiencies. At his death any surplus will be included in what "remains" and will go to Mrs. Stewart.

The second question is—what interest does Roy G. Stewart take?

Jesse W. Stewart was a son of Addie G. Stewart and is now dead. Roy G. Stewart, another son, later-born, is now living. We think it is very clear that the remainder vests in him, subject of course to open and let in after-born children.

The next question is, whether Mr. Goodnough is entitled as a part of his support to the expense of keeping and providing for his present wife in a proper and suitable manner. The facts bearing upon this question are found as follows: —"From a period shortly before the marriage of Mr. Goodnough with his present wife, to the present time, Mr. Goodnough owing to his advanced age and bodily infirmities, has been and now is in need of an attendant to take care of him. He will probably continue to need such an attendant the rest of his life. For about half of said period he has been sick and under the care of a physician. He has for such period needed the services of a nurse. Such services were rendered by his wife."

The provision for his support should be liberally construed. He is not to be required to change essentially his style of living, to board at the lowest possible rate, or to live alone. It seems reasonable that he should be permitted to continue in the house in which he lived so long. If so, it is necessary that some one should care for his house and take care of him in health and sickness. For that purpose it may not be unreasonable that he should have a wife. Possibly it is the most economical arrangement he can make. We do not care therefore to discuss the abstract question whether provision for a man's support includes as matter of law the support of a wife. It seems to us that the real question is, whether it is reasonable under all the circumstances that he should have a wife.

We are disposed to advise the Superior Court that under the circumstances of this case the support of a wife may be properly included in his own support. The expenses of a housekeeper or nurse, or both, may be more than the cost of supporting the wife. Hence it may be better for all concerned.

We answer the fifth question by saying that Mr. Goodnough is entitled to his support from the death of the testatrix.

As to the expenses of litigation. We do not think that sufficient facts appear to enable us to decide this matter. The facts stated hardly raise any legal questions. We will only say generally, that we are aware of no inflexible rule of law that will prevent their payment. If Mr. Goodnough was without fault, or even if he was legally in fault, the circumstances may be such as to make them a proper claim. He may have been called upon to defend the estate, or to settle some conflicting claims respecting his own rights. In these and like cases a liberal construction of the will would allow to him any legal expenses reasonably incurred.

The questions relating to the sale of stock and real estate are to be determined upon business rather than legal principles. We ought not, in this proceeding certainly, to be called upon to settle them. If a sale of either is to be effected it may be necessary to invoke the aid of the courts. The time to settle any legal questions that may arise, will be when they are presented in a regular proceeding and all the facts are ascertained.

In this opinion the other judges concurred.